**George FARRAR, Plaintiff in Error,**

v.

**Ida Mae CHITWOOD, Defendant in Error.**

No. 36239.

Supreme Court of Oklahoma.

April 19, 1955.

Appeal from District Court of LeFlore County; Clyde M. Followell, Judge.

Action for damages for fraud and deceit in sale of cattle. Judgment for plaintiff and defendant appeals. Affirmed.

Windham & Windham, Poteau, for plaintiff in error.

Joe K. Page, Poteau, for defendant in error.

ARNOLD, Justice.

Plaintiff, Ida Mae Chitwood, brought this action in the District Court of LeFlore County against George Farrar to recover damages allegedly sustained by reason of fraudulent representations made by defendant in the sale of cattle to plaintiff.

In support of the allegations of her petition plaintiff's evidence reasonably tends to show that she was engaged in cattle and dairy business and had been so engaged for almost all of her life; that defendant bought and sold cattle; that she and her foreman went to defendant's home for a social visit in January, 1951, at which time defendant offered to sell her some cattle; that plaintiff told defendant she needed a registered bull to build up her herd, whereupon defendant told her that a certain whiteface hereford cow named "Marcella" which he had was registered and that her 3-weeks old male calf was subject to reg-

istration; that another brindle cow in the bunch had been bred to a whiteface bull and would soon have a whiteface calf; that he had bought the cattle from a certain Mr. Wesson in Mississippi who kept the best of whiteface bulls; that defendant's brother had the registration papers on "Marcella" in his possession and he would obtain the papers from his brother upon his brother's return from Mississippi; that relying upon these representations plaintiff bought four cows and three calves, among them being "Marcella" and her male calf and the brindle cow, for a total price of $1,000; that in this sum of $1,000 was included the sum of $300 for the cow "Marcella" and $233.33 for the brindle cow; that some thirty days after she purchased the cows defendant delivered to her a registration certificate of the American Hereford Association describing a cow named "Marcella" born August 5, 1943, with a tattoo in the right ear; that the cow which she bought as "Marcella" was a polled hereford, born without horns, which could only have been registered with the American Polled Hereford Association, was a much younger cow, and had no tattoo mark; that she returned this certificate to defendant and requested him to obtain the correct papers on the cow which she had bought; that defendant kept promising he would do so each time he went to Mississippi but never did; that some three months later he returned to her the same certificate which he had originally given her; that she then wrote Mr. Wesson in Mississippi who replied that he bought and sold cows commercially and had made no representation as to the age of this cow or any guarantee as to her registry; that he had bought this cow from a man in Mississippi, now deceased, who had sold him the cow without giving a transfer endorsement on any registration papers; that had "Marcella" been a registered cow as represented she would have been worth $300, the price that was paid for her; that a stock cow, unregistered, was worth some $100 less; that "Marcella's" bull calf, had it been registered, would have been worth from $125 to $150 at the time she bought it but as a stock calf was worth $50 to $100 less than a registered calf; that the brindle cow brought a bull jersey calf; that at the time she bought this brindle cow she was worth at least $50 more had she been carrying a whiteface calf as represented by defendant instead of the bull jersey calf which she bore; that the bull jersey calf was sold for $76; that it would have been worth $125 had it been a whiteface; that she would not have bought the cows had she not needed a registered bull for her herd, which she intended to raise "Marcella's" calf to be, and had it not been for the representations made by defendant as to the registration of "Marcella" and her calf and the sire of the calf which the brindle cow was carrying.

Defendant's testimony reasonably tends to show that while in Mississippi for the purpose of buying milch cows he learned that a Mr. Wesson had cows to sell; that he bought two whiteface and two brindle cows from him; that as he was leaving Mr. Wesson said he had the papers on one of the cows and defendant told him to give the papers to defendant's brother who would come for the cows; that several days later, after he had returned home with the cows and had them in his lot, plaintiff and her foreman came over for a visit and looked at the cows; that he told her he would sell them to her for $1,000; that she asked him what kind of a calf the brindle cow would bring and he told her that he bought all four cows from Mr. Wesson who had only whiteface bulls and that he presumed the brindle cow's calf would be a whiteface; that when he told plaintiff that "Marcella" was registered he did not know whether she was registered or not but that he told plaintiff the man he bought the cow from gave him the papers on the cow and that if the transfers were up to date the calf could be registered; that he did not know which of the cows the registration certificate was supposed to belong to as two of the cows were similar in appearance but he thought it was the cow "Marcella"; that Mr. Wesson did not tell him anything about the sires of any of the calves.

The jury returned a verdict in favor of plaintiff in the amount of $200 and judgment was entered in accordance therewith. Defendant appeals.

■■ Defendant urges that the burden was upon plaintiff to show fraud by evidence that is clear, satisfactory and convincing; that the evidence fails to show with the required degree of certainty that defendant knew the representations made by him were false and that he made them with the intention that they should be acted upon by plaintiff. 15 O.S.1951 § 58, defines actual fraud committed by a party to a contract with intent to deceive another party thereto or to induce him to enter into a contract, as, among other things:

"The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true."

In Jeter v. De Graff, 93 Okl. 76, 219 P. 345, we held that a party is guilty of fraud and deceit where, with intent to induce another to enter into a contract, he makes a positive assertion, which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true, where the assertion so made is not true, even though believed by the party making it.

Under defendant's own testimony he had not examined the registration papers of the cow "Marcella" at the time he sold her to plaintiff as a registered cow. He was relying only on the word of the man who sold the cow to him. He stated that he was not told definitely by Mr. Wesson that the cow he sold as "Marcella" was the one which was supposed to be registered. Certainly the certificate which he delivered to plaintiff showed on its face that it could not belong to any of the cows which he sold plaintiff, as it concerned a horned Hereford animal whereas the ones sold plaintiff were polled Herefords. He admitted he made no inquiry as to the sires either of the calf of the cow known as "Marcella" or the calf which the brindle cow was carrying, yet he admitted he told plaintiff that if the transfers on "Marcella's" registration certificate were in order she could have "Marcella's" calf registered, and he admitted he merely presumed the brindle cow would bring a whiteface calf because the only bulls he saw on the place were whitefaces. Certainly under these admissions defendant made positive material representations which were not warranted by his information, even though he might have believed them to be true. Plaintiff testified positively, as did her foreman, that she relied on these representations of defendant and would not have traded with him had she not relied on them. The evidence is ample to support the verdict of the jury.

■ Defendant next contends that the instructions as a whole are contradictory and confusing and tended to mislead the jury. He predicates this upon the fact that Instruction No. 1 defines preponderance of the evidence; Instruction No. 2 defines fraud (in this instruction the jury is instructed that defendant must have knowingly made a false representation, which is more favorable under our statute that defendant was entitled to); Instruction No. 3 gives the measure of damages as the difference in value between the cattle sold plaintiff and the value had the cattle been as represented; Instruction No. 4 (which was obviously given by inadvertence and could hardly mislead a jury) tells the jury they may assess plaintiff's recovery as such amount as they find from a preponderance of the evidence were sustained by plaintiff "as a direct and proximate result of the accident" not to exceed the amount sued for; in Instruction No. 7 the court tells the jury that nine may return a verdict, while in Instruction No. 9 the jury is instructed that its verdict was unanimous (the verdict was unanimous and this latter instruction was beneficial only to defendant). Although these instructions could have been improved upon in context, considered as a whole they submitted the issues to the jury very fairly; in fact, as pointed out above, defendant was given an advantage to which he was not entitled. We cannot believe that the jury could have been mislead by an instruction pertaining to an ac-

tion for damages for personal injuries arising from an accident—they certainly knew they were trying an action based on fraud in the sale of cows.

Affirmed.

WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.